RECORD NO. 11-2250

In The

# United States Court of Appeals
### For The Fourth Circuit

## VICTOR STANLEY, INC.,

*Plaintiff – Appellee*,

v.

## CREATIVE PIPE, INC.; MARK T. PAPPAS,

*Defendants – Appellants*,

and

## STEPHANIE E. PAPPAS; JOHN DOE, a/k/a Fred Bass,

*Defendants*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### AT GREENBELT

———————

### BRIEF OF APPELLANTS

———————

James A. Rothschild
ANDERSON, COE & KING, LLP
Seven Saint Paul Street, Suite 1600
Baltimore, Maryland 21202
(410) 752-1630

*Counsel for Appellants*

Joshua J. Kaufman
VENABLE, LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-8538

*Counsel for Appellants*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No**. 11-2250 _____          **Caption:** Victor Stanley, Inc. v. Creative Pipe, Inc.

## CORPORATE DISCLOSURE STATEMENT

There is no parent corporation or publicly held corporation that owns 10% or more of the stock of Appellant Creative Pipe, Inc.

The Hartford Financial Services Group, Inc., as the insurance carrier for Appellant Creative Pipe, Inc., has a direct financial interest in the outcome of the litigation by reason of insurance agreement.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................iv

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES..........................................................2

STATEMENT OF THE CASE...............................................................3

STATEMENT OF FACTS .....................................................................5

      A.    The Site Furnishing Industry ..................................................5

      B.    Creative Pipe's Actions between 2004 and 2006.................7

            1.    Obtaining and Using CAD Drawings Derived from Victor Stanley CAD Drawings. ...................................7

            2.    Creative Pipe Advertising ........................................10

            3.    Made in America Representations ............................11

            4.    Removal of Made-in-China labels ...........................11

      C.    Evidence of Damages .........................................................12

SUMMARY OF ARGUMENT .............................................................14

STANDARD OF REVIEW ...................................................................16

ARGUMENT ........................................................................................17

      I.    The District Court Erred, as a Matter of Law, by Awarding Victor Stanley Damages for Infringement of the Copyrights in its Technical Drawings Based on Creative Pipe's Gross Revenues from Sales of the "Useful Articles" Depicted in those Drawings. ..........................................................................17

     A.     The Governing Statutory Provisions..........................................19

     B.     The Copyright Act Imposes a Statutory Barrier that Breaks the Chain of Causation that the District Court Purported To Find ....................................................................24

II.     The District Court Erred in Finding Liability for Patent Infringement when Plaintiff failed to introduce any evidence that an "Ordinary Observer" Could have Determined that the Design Patent Had Been Infringed.......................................................32

III.     The District Court Erred in Awarding Compensatory Damages For Reverse Passing Off Without Evidence of Actual Injury.............37

IV.     The District Court Erred in Awarding Compensatory Damages Without Evidence of Actual Injury as Required By Maryland Common Law Actions for Unfair Competition. .................................44

V.     The District Court Erred in the Expansive Standard It Used When It Awarded Attorneys' Fees As a Sanction for Spoliation. ......50

CONCLUSION .....................................................................................58

REQUEST FOR ORAL ARGUMENT ..................................................59

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aktiebolaget Electrolux v. Armatron Intl*,
    829 F. Supp. 458 (D. Mass. 1992)................................................39

*Arminak and Assoc., Inc. v. Saint-Gobain Calmar, Inc.*,
    501 F.3d 1314 (Fed. Cir. 2007) ...................................................33

*Balance Dynamics v. Schmitt Industries*,
    204 F.3d 683 (6th Cir. 2000) .......................................................39

*Baltimore Bedding Corp v. Moses*,
    182 Md. 229, 34 A.2d 338 (1943) ...............................................46

*BASF Corp. v. Old World Trading Co.*,
    41 F.3d 1081 (7th Cir. 1994) ................................................. 43-44

*Black & Decker Inc. v. Pro-Tech Power Inc.*,
    26 F. Supp. 2d 834 (E.D. Va. 1998) ............................................39

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)............................................................ 21, 29

*Bracco Diagnostics v. Amersham Health, Inc.*,
    627 F. Supp. 2d 384 (D. N.J. 2009)..............................................39

*Car-Freshener Corporation v. Marlenn Products Company*,
    183 F. Supp. 20 (D. Md. 1960)....................................................47

*Christopher Phelps & Associates v. Galloway*,
    492 F.3d 532 (4th Cir. 2007) .......................................................28

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) .......................................................37

*Cobell v. Babbit*,
    188 F.R.D. 122 (D.D.C.1999) .....................................................54

iv

*Combustion Eng'g, Inc. v. Murray Tube Works, Inc.*,
   U.S. P.Q. 239 (E.D. Tenn. 1984)..................................................................22

*Compco Corp. v. Day-Brite Lighting, Inc.*,
   376 U.S. 234 (1964)....................................................................................21

*Crocs, Inc. v. Inter'l Trade Com'n*,
   598 F.3d 1294 (Fed. Cir. 2010) ..................................................................33

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)......................................................................................37

*Demetriades v. Kaufmann*,
   680 F. Supp. 658 (S.D.N.Y. 1988) ........................................................ 21, 28

*Eden Toys v. Marshall Field & Co.*,
   675 F.2d 498 (2d Cir. 1982) .......................................................................21

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ................................................ 33, 34, 35, 36

*Eliya, Inc. v. Kohl's Department Stores*,
   2006 WL 2645196 (S.D.N.Y. Sept. 13, 2006) ............................................26

*GAI Audio of New York, Inc. v. Columbia Broadcasting*,
   27 Md. App. 172 (1975) ..............................................................................44

*Goodman v. Praxair Servs., Inc.*,
   632 F. Supp. 2d 494 (D. Md. 2009).......................................................52, 53

*Gorham Co. v. White*,
   81 U.S. 511 (1871).......................................................................................33

*Gusler v. Fischer*,
   580 F. Supp. 2d 309 (S.D.N.Y. 2008) ........................................................22

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ...................................................................39

*LTVN Holdings, LLC v. Odeh*,
  2010 U.S. Dist. LEXIS 63164 (D. Md. June 25, 2010) .......................... 31-32

*Metropolitan Opera Association v. Local 100, Hotel Employees and
Restaurant Employees International Union*,
  212 F.R.D 178 (S.D.N.Y. 2003).................................................................53

*Nat'l Med. Care, Inc. v. Espiritu*,
  284 F. Supp. 2d 424 (S.D. W.Va. 2003) ....................................................21

*Niemi v. Am. Axle Mfg. & Holding, Inc.*,
  No. 05-74210, 2006 WL 2077590 (E.D. Mich. July 24, 2006) ....... 20, 22, 23

*Niemi v. NHK Spring Co.*,
  84 U.S.P.Q.2d 1766 (N.D. Ohio 2007) ......................................................22

*Nintendo of Am., Inc. v. Aeropower Co.*,
  34 F.3d 246 (4th Cir. 1994), *cert. denied*,
  515 U.S. 1107 (1995) ................................................................................24

*Oakley, Inc. v. Inter'l Tropic-cal, Inc.*,
  923 F.2d 167 (Fed. Cir. 1991) ...................................................................33

*On Davis v. The Gap*,
  246 F.3d 152 (2d Cir. 2001) ................................................................ 25, 31

*Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*,
  254 F.2d 738 (7th Cir. 1985) .....................................................................39

*Pizzeria Uno v. Temple*,
  747 F.2d 1522 (4th Cir. 1984) ...................................................................16

*Porous Media Corp. v. Pall Corp.*,
  110 F.3d 1329 (8th Cir. 1997) ...................................................................38

*PPX Enters. Inc. v. Audiofidelity Enters. Inc.*,
  818 F.2d 266 (2d Cir. 1987) .......................................................................38

*Procter and Gamble Company v. Haughen*,
  627 F. Supp. 2d 1287 (D. Utah 2008) ........................................................44

*Schlotzky's Ltd. v. Sterling Purchasing*,
   520 F.3d 393 (5th Cir. 2008) ...................................................................38

*Sears, Roebuck & Co. v. Stiffel Co.*,
   376 U.S. 225 (1964)..................................................................................21

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
   538 U.S. 408 (2003)..................................................................................49

*Syngenta Seeks, Inc. v. Delta Cotton Coop, Inc.*,
   457 F.3d 1269 (Fed Cir. 2006) .............................................................. 37-38

*Tequila Centinela v. Bacardi & Co. Ltd.*,
   248 F.R.D. 64 (D.D.C. 2008) ...................................................................54

*U-Haul Int'l Inc. v. Jartran Inc.*,
   601 F. Supp. 1140 (D. Ariz. 1984) *aff'd in part,
   modified in part and rev'd in part on other grounds*,
   793 F.2d 1034 (9th Cir. 1986) .............................................................. 38-39

*United States ex re. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*,
   86 F.3d 332 (4th Cir. 1996) ......................................................................16

*Universal Furniture v. Collezione Europa USA*,
   618 F.3d 417 (4th Cir. 2010) ......................................................... 16, 42, 43

*Web Printing Control v. Oxy-Dry Corp.*,
   906 F.2d 1202 (7th Cir. 1990) ..................................................................38

*Wilson v. Volkswagen of America, Inc.*,
   561 F.2d.494 (4th Cir. 1977) ....................................................................16

## STATUTES

15 U.S.C. § 1117(a) .......................................................................................43

15 U.S.C. § 1125(a)(1)(A) .............................................................................37

17 U.S.C. § 101 ............................................................................... 20, 22, 29

17 U.S.C. § 102(a)(5) ................................................................................... 19

17 U.S.C. § 102(a)(8) ................................................................................... 29

17 U.S.C. § 102(b) ................................................................................ 21, 26

17 U.S.C. § 106 ..................................................................................... 19, 20

17 U.S.C. § 113(b) ................................................................................ *passim*

17 U.S.C. § 1301 .......................................................................................... 29

17 U.S.C. § 1301(a)(2) ................................................................................. 30

17 U.S.C. § 1308 .......................................................................................... 30

17 U.S.C. § 504(b) ....................................................................................... 26

28 U.S.C. § 1291 ............................................................................................ 1

28 U.S.C. § 1331 ............................................................................................ 1

28 U.S.C. § 1332(a)(1) .................................................................................... 1

28 U.S.C. § 1338(a) ........................................................................................ 1

28 U.S.C. § 1338(b) ........................................................................................ 1

28 U.S.C. § 1367(a) ........................................................................................ 1

35 U.S.C. § 271 ............................................................................................ 19

**RULES**

Fed. R. Civ. P. 37 ........................................................................................ 54

Fed. R. Civ. P. 37(b) ................................................................................... 16

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) ............................................................. 54

Fed. R. Civ. P. 37(b)(2)(A)(vii) .............................................................50, 54

Fed. R. Civ. P. 37(b)(2)(C) ........................................................ 2, 50, 53

**TREATISES**

*Nimmer on Copyright* § 2.03[D] ...............................................................21

*Nimmer on Copyright* § 2.08[D][2][b] ......................................................28

*Nimmer on Copyright* § 2.18 .....................................................................21

*Nimmer on Copyright* § 2.18[A] ...............................................................20

**OTHER AUTHORITIES**

Cong. Rec. -----, House Comm. on the Judiciary,
87th Cong., Report of the Register of
Copyrights on the General Revision of the U.S. Copyright Law (1961) ...............23

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of the United States District Court for the District of Maryland. A final judgment was entered on November 4, 2011, and a notice of appeal was timely filed on November 8, 2011. The District Court had jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a), (b) and 28 U.S.C. § 1367(a) and § 1332(a)(1). The basis for the Court of Appeal's jurisdiction is 28 U.S.C. § 1291, which provides that the Courts of Appeals shall have jurisdiction of appeals from all final decisions of district courts of the United States.

# STATEMENT OF THE ISSUES

1.      Whether the District Court erred in calculating damages for copyright infringement based on Creative Pipe's gross revenues from the sale of non-infringing "useful articles."

2.      Whether the District Court erred in finding liability for patent infringement when Plaintiffs failed to introduce any evidence that an "ordinary observer" would have determined that the design patent had been infringed.

3.      Whether the District Court erred in awarding damages for reverse palming off under the Lanham Act when Plaintiff failed to satisfy an essential element of the claim by introducing evidence showing that it actually had been injured.

4.      Whether the District Court erred in awarding damages for unfair competition under Maryland common law when Plaintiff failed to satisfy an essential element of the claim by introducing evidence showing that it actually had been injured.

5.      Whether the District Court erred in the expansive standard it used to award attorneys' fees under Fed. R. Civ. P. 37(b)(2)(C) for spoliation.

## STATEMENT OF THE CASE

Appellant-Defendant Creative Pipe, Inc. ("Creative Pipe") hereby appeals the amount of damages awarded by the District Court on causes of action for copyright infringement, reverse passing off under the Lanham Act, and a common law claim of unfair competition under Maryland law; and for its finding that Creative Pipe violated Plaintiff's design patent.

Plaintiff and Defendant are competitors in the site furnishing business. Plaintiff Victory Stanley, Inc. ("Victor Stanley") sued Defendant Creative Pipe, along with two individuals, Mr. and Mrs. Pappas. Mrs. Pappas was dismissed as a Defendant. The Complaint asserted twelve counts, which after various motions were decreased to four counts asserted against Creative Pipe and Mr. Pappas that proceeded to trial: copyright infringement, unfair competition, false advertising, and patent infringement. On November 4, 2011, the District Court entered judgment against Creative Pipe on all four counts and awarded Victor Stanley an injunction and compensatory damages in the amount of $1,150,750.79 plus prejudgment interest of $228,804.91 for copyright infringement; an injunction and compensatory damages of $1,150,750.79, prejudgment interest of $223,051.16, and punitive damages of $500,000.00 for unfair competition under Maryland law; an injunction and $1,150,750.79, prejudgment interest of $228,804.91, $575,375.40 in enhanced damages, and attorneys' fees and costs for unfair

3

competition under the Lanham Act; an injunction and attorneys' fees for false

advertising; and $35,127.00, prejudgment interest of $10,014.05 and attorneys'

fees for design patent infringement.  A notice of appeal was timely filed on

November 8, 2011.

## STATEMENT OF FACTS

A.    <u>The Site Furnishing Industry.</u>

Site furnishings are outdoor products for public spaces that include large steel benches, trash receptacles, ash urns and planters.  The customers for site furnishings are, in large part, municipalities and universities.  Approximately 30 to 40 large companies make steel site furnishings.  (J.A. 1420-1421)

Municipalities purchase site furnishings through their procurement department using a bidding system.  The procurement department issues an invitation to bid for specific site furnishings.  (J.A. 2069-2070)  The invitation will specify the exact product to be purchased, including, *inter alia,* the materials to be used, and the dimensions and basic design of the product.  Often the invitation will specify a particular manufacturer's product or "approved equal" as a reference.  Victor Stanley, Inc.'s products are, at times, referenced in the invitations to bid.  (J.A. 3216-3220)  The invitations to bid will usually state that a bid will be awarded to the lowest-responsive, responsible bidder.  (J.A. 2070)  Bidders respond with written bids that describe their products and provide a price for each product.  Pictures and computer-aided design ("CAD") drawings are often provided with bids.  Bids for site furnishing equipment are frequently awarded where no CAD drawings are supplied.  (J.A. 2013-2014)

The procurement department tabulates the bids by the names of the bidders and prices for each product. If the bids appear to conform to the bid invitation, the lowest bid is sent to the department requesting the product to determine if the bid is responsive to the invitation to bid. The requesting department then determines if the lowest bid is responsive to the bid requirements. If that determination is made, the bid will be awarded to the low bidder. (J.A. 2071-2072)

Victor Stanley, Inc. ("Victor Stanley") is a Maryland corporation. In the period 2004 through 2010, it was one of the largest manufacturers of steel site furnishings in the United States. Beginning in December 2003, Victor Stanley operated a website on the Internet. A portion of the website that was accessible to the public was a "Product Library" that included links to technical and proprietary data about Victor Stanley's products, including CAD drawings and product images. In order to obtain access to the Product Library, a computer user completed an online registration form by furnishing a variety of identifying information and selecting a password. A user could then download CAD drawings from the Product Library. A computer recorded each time a user accessed the Product Library and downloaded CAD drawings. (J.A. 1498, 1505-1506)

Appellant Creative Pipe, Inc. ("Creative Pipe") is located in Rancho Mirage, California. Mark T. Pappas is the President of Creative Pipe. Creative Pipe sells site furnishings made by outside vendors.

B.      Creative Pipe's Actions between 2004 and 2006.

      1.      Obtaining and Using CAD Drawings Derived from Victor Stanley CAD Drawings.

Between 2004 and 2006, a laptop computer owned by Mark Pappas was used to download CAD drawings of site furnishings from the Victor Stanley website.  (J.A. 1506-1507)  Fictitious names were used to gain access to the Victor Stanley Product Library.  Some of the downloaded CAD drawings were transmitted to Argentina where they were altered.  Victor Stanley's name was removed from the drawing and replaced by Creative Pipe's name.  The name given to a specific product by Victor Stanley, i.e., a bench, trash receptacle or ash urn, was replaced with the name of a similar Creative Pipe product.  After Creative Pipe obtained copies of Victor Stanley CAD drawings, Creative Pipe offered for sale 20 products similar to the Victor Stanley site furnishing.  These products consisted of several models of litter receptacles, outdoor benches, planters and ash urns.  (J.A. 1523-1524, 3349)

Beginning in 2005, Creative Pipe arranged for many of its site furnishings to be manufactured in China.  In 2005 and 2006, Creative Pipe used Digican, a broker, to have its site furnishing products manufactured in China.  (*See* J.A. 3287-3301) (e-mails to Digican May 15, 2006, May 17, 2006, June 21, 2006, and August 29, 2006 .)

In 2005 and 2006, Creative Pipe attached CAD drawings derived from Victor Stanley CAD drawings to bids that Creative Pipe submitted to eight municipalities.[1]

<u>2005 Bids</u>

University of Nevada at Las Vegas bid (June 20, 2005) for outdoor benches, litter receptacles and ash urns. (J.A. 3383-3407) There were four (4) bidders. (J.A. 3408-3409)

St. Charles, Missouri, bid (June 22, 2005) for outdoor benches and litter receptacles. (J.A. 3452-3473) There were six (6) bidders. (J.A. 3474)

Virginia Tech bid (August 23, 2005) for outdoor benches, litter receptacles and ash urns. (J.A. 3418-3436) There were eleven (11) bidders. (J.A. 3437-3438)

Portsmouth, Virginia, bid (September 15, 2005) for outdoor benches, litter receptacles and planters. (J.A. 3375-3381) There were two (2) bidders. (J.A. 3382)

<u>2006 Bids</u>

Tempe, Arizona, bid (February 15, 2006) for outdoor benches and ash urns. (J.A. 3410-3417)

---

[1] The only municipality that required drawings to be submitted with a bid was St. Charles, Missouri, but only for trash receptacles. (J.A. 3459-3460) Green River, Wyoming provided their own copies of Victor Stanley drawings for the products on which they wanted to obtain bids. (J.A. 3447-3450)

Green River, Wyoming, bid (April 14, 2006) for outdoor benches and litter receptacles.  (J.A. 3440-3450)  There were five (5) bidders.  (J.A. 3451)

Norfolk, Virginia, bid (June 8, 2006) for outdoor benches, and litter receptacles.  (J.A. 3361-3373)  There were (eight) 8 bidders.  (J.A. 3374)

Huntsville, Alabama, bid (July 20, 2006) for trash receptacles and ash urns.  (J.A. 2698-2712)[2]

Victor Stanley submitted a bid for each of these municipal purchases.  Creative Pipe was the winning bidder for each of these bids with the lowest price.  Victor Stanley was the next lowest bidder only for the Portsmouth bid.  Aside from the identified eight (8) municipal sales, Victor Stanley presented no evidence that it was a competitor of Creative Pipe for any other municipal awards where Creative Pipe submitted a CAD drawing derived from Victor Stanley drawings.

Creative Pipe also dealt with third parties who were looking for site furnishings for municipal projects.  Creative Pipe supplied a CAD drawing of a trash receptacle derived from a Victor Stanley CAD drawings on May 5, 2006 to a broker (FHP Tectonics Corporation) for a contract with the Chicago Transit Authority.  (J.A. 2754-2756)  Creative Pipe provided, on June 11, 2006, a CAD drawing of a bench, derived from a Victor Stanley CAD drawing, to a broker for a project in New Providence Borough, New Jersey.  (J.A. 2824-2826)  In both cases,

---

[2]  Creative Pipe withdrew its bid to Huntsville after the litigation commenced.

Creative Pipe received the sale. There was no evidence that Creative Pipe competed with Victor Stanley for these sales.

Victor Stanley presented no evidence that any CAD drawing submitted by Creative Pipe with a bid was a factor in that bid being awarded to Creative Pipe. In fact, the only testimony presented was to the contrary. Michael Ammons, the Purchasing agent for the City of Portsmouth, Virginia testified that no CAD drawings were required to be presented with the bids submitted to Portsmouth, Virginia because he did not think the equipment purchase was complex enough to require CAD drawings. (J.A. 2076-2077, 2086-2087) He also stated that he had no knowledge the CAD drawings provided by Creative Pipe were a factor that the Parks Department took into account when determining that Creative Pipe's bid was responsive. (J.A. 2079-2080)

Stanley Skalka, the President of Victor Stanley, testified that he had no knowledge that the furnishing of a derivative Victor Stanley CAD drawing was a factor in the award of the identified municipal bids to Creative Pipe. (J.A. 1485-1486)

2.    Creative Pipe Advertising.

Creative Pipe created a website to display photographs of the products it sold. Creative Pipe also produced a catalog of its products. Both on its website and in its catalog, Creative Pipe made statements about where its products were

10

manufactured, and the quality and performance of its products.  The website and catalogue stated that Creative Pipe was an American manufacturer.

Victor Stanley presented no evidence any purchaser of Creative Pipe products viewed Creative Pipe's catalog or its website before making their decision to purchase a VSI-like product from Creative Pipe.

### 3.    Made in America Representations.

Victor Stanley produced evidence that on several occasions Creative Pipe represented to potential municipal customers that its site furnishings were made in America when in fact they were made in China.  These included statements to the City of St. Charles, Missouri, 2006 (J.A. 3456); Long Island Railroad, 5/17/2006 (J.A. 2746-2749); West Bay Construction, Inc., 1215/06 (J.A. 2752-2753); and FHP Tectonics Corporation, 7/16/2006 (J.A. 2754-2756).  With the exception of St. Charles, Missouri, Victor Stanley was not a competitor for any of these bids.

### 4.    Removal of Made-in-China labels.

The site furnishings made in China were required to have labels identifying that they had been made in China.  In 2005 and 2006, Mark Pappas was involved in an effort to remove the "Made in China" labels on Creative Pipe products.  (J.A. 2715-2717)

11

C.    Evidence of Damages.

Victor Stanley presented the same evidence of damages for its copyright infringement, unfair competition, and reverse passing-off claims. The damages were based on the gross revenues of 20 Victor Stanley-like products--litter receptacles, benches, ash urns and planters--by Creative Pipe from February 10, 2005 to December 30, 2010. Victor Stanley's expert, Joseph Barsky, calculated that the gross sales of the 20 identified Victor Stanley-like products was $2,075,237.37. Mr. Barsky calculated that the gross profit for the sale of Victor Stanley-like products was $1,011,056. Mr. Barsky calculated interest at 6% per year on as $379, 397. (J.A. 2827)

Benjamin Liu operates a design and drafting company called CADBuilt, Inc. Mr. Liu operated CADBuilt, Inc. since 2003. Mr. Liu has a PhD in biomechanical engineering from the University of Michigan, a master's degree in chemical engineering from Michigan, and a bachelor's degree in engineering from Swarthmore College.

Mr. Liu prepared a three-dimensional CAD drawing of a trash receptacle. He testified that it would take him 14 hours to prepare a three-dimensional drawing of a trash receptacle, including measuring the receptacle, and making two-and three-dimensional drawings. (J.A. 2359) Mr. Liu testified that it would take him approximately 14 hours to create a three-dimensional CAD drawing of a park

12

bench, including measuring the bench, and creating two-and three-dimensional drawings.  Mr. Liu charges $70 per hour.  (J.A. 2361-2362)  A CAD drawing that takes 14 hours to make at $70 an hour costs $980.

# SUMMARY OF ARGUMENT

The District Court erred in calculating damages for copyright infringement of Victor Stanley's technical drawings based on Creative Pipe's gross revenues from the sale of non-infringing "useful articles" depicted in those drawings. By including revenues from the sale of those articles, the District Court erred as a matter of law by improperly expanding the scope of copyright protection into the realm of useful articles, which is the exclusive domain of patent law; and by adopting a "but for" causation theory that violates a statutory barrier created by the Copyright Act.

Further, the District Court erred in finding Creative Pipe liable for patent infringement because Plaintiffs failed to introduce any evidence that an "ordinary observer" would have determined that the design patent had been infringed. Without such evidence, the District Court was not permitted to make that determination *ex cathedra* of whether an "ordinary observer" believed the articles were so similar so as to result in design patent infringement.

The District Court also erred in awarding damages for reverse palming off under the Lanham Act, unfair completion under the Lanham Act, and unfair competition under Maryland common law. In each case, Plaintiff failed to satisfy an essential element of these claims. It failed to introduce evidence that it had actually been injured by Creative Pipe's actions or that there had been any reliance

14

on any of Creative Pipe's actions.  Finally, the District Court erred in its award of attorneys' fees and costs in connection with Appellant's spoliation of electronically stored information, because Plaintiff failed to demonstrate a causal link between the attorneys' fees and costs claimed and the spoliation in issue.

## STANDARD OF REVIEW

In reviewing the judgment resulting from the bench trial in the District Court, this Court should apply a "mixed standard of review," in which factual findings may be reversed if clearly erroneous, while conclusions of law are examined de novo.  *Universal Furniture v. Collezione Europa USA*, 618 F.3d 417, 427 (4th Cir. 2010).  A court's calculation of damages "is a finding of fact and therefore reviewable only for clear error, but to the extent those calculations were influenced by legal error, review is de novo."  *Id* (quoting *United States ex re. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332, 334 (4th Cir. 1996).  A finding of fact is clearly erroneous "when there is no evidence in the record supportive of it and also, when, even though there is some evidence to support the finding, the reviewing court, on review of record, is left with a definite and firm conviction that a mistake has been made in the finding."  *Pizzeria Uno v. Temple*, 747 F.2d 1522, 1526 (4th Cir. 1984).  The power to impose sanctions under Rule 37(b) is reviewed under an abuse of discretion standard considering the full record and the reasons assigned by the trial court.  An abuse of discretion should be reversed if the appellate court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached.  *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 505-506 (4th Cir. 1977).

## ARGUMENT

I.    <u>The District Court Erred, as a Matter of Law, by Awarding Victor Stanley Damages for Infringement of the Copyrights in its Technical Drawings Based on Creative Pipe's Gross Revenues from Sales of the "Useful Articles" Depicted in those Drawings.</u>

The District Court erred, as a matter of law, in awarding VSI damages for infringement of its copyrighted technical drawings based on the gross revenues that Creative Pipe received from the sale to customers of its site furnishings, which are non-infringing, non-copyrightable "useful articles" based on those depicted in the VSI drawings. Section 113(b) of the Copyright Act, 17 U.S.C. § 113(b), and the case law applying that provision establish that the manufacture and sale of such non-infringing, non-copyrighted "useful articles" do not infringe the copyright of the owner of the technical drawings. The owner therefore is not entitled to recover damages for copyright infringement based on the revenues generated by the sale of such lawful, non-infringing products.

There is no support in the language of the statute or the case law for the District Court's attempt to award damages based on a "fruit of the poisonous tree" theory. The Copyright Act does not authorize an owner to recover damages from a person who infringed its copyright for technical drawings based on the infringer's gross revenues from the sale of non-copyrightable, non-infringing "useful articles" that were manufactured by utilization of those drawings. It

thereby imposes a statutory barrier that breaks the "causal link" that the District Court drew between the copyright infringement of the drawings and revenues from the sale of the useful articles they depict.  (J.A. 3530)  Under the law, the copyright owner is not entitled to the profits of the infringer received from the sale of "useful articles."

The District Court did not cite any relevant authority to support its novel damages theory.  Further, its approach to damages would undermine one of the cardinal principles of U.S. intellectual property law--that copyright claims cannot be used as a backdoor mechanism to prevent sales of the non-copyrightable "useful articles."

In holding that damages from an infringement of copyrighted technical drawings may include gross revenues from the sale of the non-infringing, non-copyrightable "useful articles" they depict, the District Court relied exclusively on outdated cases involving the award of damages based on the revenues for buildings constructed through infringement of copyrighted architectural drawings.  However, in a statue adopted in 1990, Congress carved out from the category of "useful articles" a specific exception for "architectural works."  Under that statute, copyright protection extends to both the architectural plans and the physical building constructed with those plans.  For this specific type

of intellectual property, damages for infringement may lawfully be based on the defendant's profits from buildings constructed from the infringed architectural drawings. But that special treatment does not apply to sales of non-infringing, non-copyrighted "useful articles" generally, such as the products depicted in VSI's technical drawings.

The decision below conflicts with decisions of other courts, which have repeatedly refused to extend the special damages rule applicable to "architectural works" to sales of the "useful articles" depicted in technical drawings whose copyrights were infringed. Indeed, the fact that Congress chose to carve out such a specific exception for buildings constructed with architectural plans, but has chosen not to do so for "useful articles" generally, further reinforces the conclusion that the District Court's award of damages for copyright infringement was unlawful and should be reversed.

A.    The Governing Statutory Provisions.

VSI's technical drawings are original pictorial or graphic works protected by 17 U.S.C. § 102(a)(5). Under 17 U.S.C. § 106, the copyright owner has the exclusive right to *inter alia* "reproduce," "distribute copies," and "display" the copyrighted drawings. However, neither 17 U.S.C. § 106 nor any other provision in the Copyright Act gives the copyright owner authority to limit the "use" of the

19

work; beyond the right granted in 17 U.S.C. § 106.  Additional "use" rights are

governed exclusively by the Patent Act, 35 U.S.C. § 271.[3]

Specifically, 17 U.S.C. § 113(b), entitled  "Scope of Exclusive Rights in

Pictorial, Graphic, and Sculptural Works," establishes a general rule that limits the

scope of copyright protection afforded owners of technical drawings that depict

"useful articles."  It provides:

> This title does not afford, to the owner of copyright in a
> work that portrays a useful article as such, any greater or
> lesser rights with respect to the making, distribution, or
> display of the useful article so portrayed than those
> afforded to such works under the law . . . in effect on
> December 31, 1977 . . .

A "useful article" is defined in turn as "an article having an intrinsic utilitarian

function that is not merely to portray the appearance of the article or to convey

information . . . ."  17 U.S.C. § 101 ¶ 46.  The benches and other utilitarian objects

depicted in VSI's drawings fall into this category.

---

[3]   *See Niemi v. Am. Axle Mfg. & Holding, Inc.*, No. 05-74210, 2006 WL 2077590,
at *2 (E.D. Mich. July 24, 2006) (quoting 1 Melville B. Nimmer & David
Nimmer, *Nimmer on Copyright* § 2.18[A] ("Where the owner of a patent obtains
the right to exclude others from using the invention, the rights granted to a
copyright owner under Section 106 do not include the right to prevent others
from using the copyrighted work.") (internal quotation marks and citations
omitted)).

Section 102(b) of the Act, 17 U.S.C. § 102(b), expressly provides that copyright protection does not:

> [e]xtend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such a work.

Thus, copyright protection extends only to the original expression of an idea embodied in a copyrighted work and does not give the author the exclusive right to use ideas expressed in his work. *Nat'l Med. Care, Inc. v. Espiritu*, 284 F. Supp. 2d 424, 433–35 (S.D. W.Va. 2003) (citing 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §§ 2.03[D], 2.18); *Demetriades v. Kaufmann*, 680 F. Supp. 658, 662 (S.D.N.Y. 1988) ("It is a fundamental maxim of copyright law . . . that a copyright protects 'only the work's particular expression of an idea, not the idea itself.'" (quoting *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982))). As the Supreme Court stated in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156:

> [W]e have consistently reiterated the teaching of *Sears* [*, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964)] and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964) that ideas once placed before the public without the protection of a valid patent are subject to appropriation without significant restraint.

Taken together, Sections 102(b) and 113(b) establish that the owner of copyrighted technical drawings has no right to prevent any person from making the

"useful articles" depicted in those drawings and that such a use does not infringe the copyright.  The case law clearly establishes that VSI's copyright in the technical drawings does not preclude Creative Pipe from manufacturing and selling the benches and other utilitarian objects depicted.  *See e.g.*, *Gusler v. Fischer*, 580 F. Supp. 2d 309, 315 (S.D.N.Y. 2008) (Although a technical drawing of a useful article may be copyrightable, "a copyright in a technical drawing of a useful article . . . does not preclude Defendants' manufacturing and marketing of the article itself."); *Niemi*, 2006 WL 2077590, at *3 ("[T]he manufacture of a machine from a copyrighted technical drawing is clearly not copyright infringement.");  *Niemi v. NHK Spring Co.*, 84 U.S.P.Q.2d 1766, 1768 (N.D. Ohio 2007) ("With this category of works [technical drawings that fall into the category of 'pictorial, graphic, and sculptural' works under 17 U.S.C. § 101], the construction of a machine that uses a process derived from a copyrighted technical drawing does not constitute a violation of the copyright."); *Combustion Eng'g, Inc. v. Murray Tube Works, Inc.*, U.S.P.Q. 239, 244 (E.D. Tenn. 1984) ("The fabrication of an article depicted in a copyrighted drawing is not protected.  17 U.S.C. § 113(b).").

Further, the legislative history of Section 113(b) expressly demonstrates that Congress intended that the scope of copyright protection would extend only to the

technical drawings, and not to the construction and sale of the "useful articles" depicted in those drawings.[4]

Thus, under the law, the copyright protection for the technical drawings of the benches and other products does not extend to the manufacture and sale of products with the same designs. The only basis on which damages may be assessed against Creative Pipe for copyright infringement is for the infringing acts involving the technical drawings themselves, and not for the sale of the useful products depicted in them.[5]

---

[4] *See Niemi*, 2006 WL 2077590, at *3 (quoting --- Cong. Rec. -----, House Comm. on the Judiciary, 87th Cong., Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law (1961)):

> Under distinctions indicated in existing court decisions, that the copyright in a work portraying a useful article as such would not protect against manufacture of that article, copyright protection would not extend to the following cases:
>
> A copyrighted drawing of a chair, used to manufacture chairs of that design;
>
> A copyrighted scale model of an automobile, used to manufacture automobiles of that design;
>
> A copyrighted technical drawing showing the construction of a machine used to manufacture the machine.
>
> A copyrighted picture of a dress, used to manufacture the dress.

[5] It should be noted the facts in this case differ from useful articles in which the copyright material is incorporated into the useful article itself, such as artwork printed on a tee shirt or a piece luggage.

B.     The Copyright Act Imposes a Statutory Barrier that Breaks the Chain of Causation that the District Court Purported To Find.

The District Court held that profits attributable to infringement of technical drawings can include profits derived from the sale of the "useful articles" they depict "if those sales are attributable to the copyright infringement."  (J.A. 3528)  It thereby created and applied a kind of "fruit of the poisonous tree" theory of causation, under which damages may be based on revenues generated by acts that are expressly lawful under the Copyright Act, if a court can find that there is some "but for" relationship or "causal link" between the copyright infringement and those sales.  The court, however, failed to cite any case involving the sale of actual "useful articles" to support the legality of its "but for" theory of damages.

There are two flaws in the court's damages theory.  First the "causal link" it found is highly attenuated.  The last act of copyright infringement in the U.S., which is the extent of U.S. copyright law as its reach is not extraterritorial (*Nintendo of Am., Inc. v. Aeropower Co*., 34 F.3d 246, 249 n.5 (4th Cir. 1994), *cert. denied*, 515 U.S. 1107 (1995)), occurred when Creative Pipe emailed the infringing copies of the technical drawings to China from the United States. (J.A. 3527) to a broker who then found a manufacturer for the site furnishings. (*See* J.A. 3287-3301) (e-mails to Digican May 15, 2006, May 17, 2006, June 21, 2006, and August 29, 2006.)

Thereafter, the non-infringing "useful articles" made from those plans were fabricated and manufactured in China; then shipped to and imported into the United States; and then delivered to Creative Pipe's customers. A copyright holder is not automatically entitled to receive damages but must show a reasonable relationship between the infringing act and the revenues earned by the defendant. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-60 (2d Cir. 2001). Here, the "causal link" between the infringement and the sale of lawful products is too remote to justify an award of damages.

More importantly, however, the District Court's causation theory violates the Copyright Act. Section 113(b) establishes a statutory barrier that breaks the chain of causation upon which the District Court based its award. That provision states that the copyright owner does not have "any greater or lesser rights with respect to the making, distribution, or display of the useful article" portrayed in the technical drawings "than those afforded to such works under the law" in effect in 1971. By giving the copyright owner the ability to recover damages based, not on the duplication of the copyrighted drawings themselves but on the sale of the non-infringing useful articles depicted in the drawings, the court conferred on VSI a right that is substantially "greater" in scope than is provided by the Copyright Act. It assessed copyright damages for sale of articles to which copyright protection simply does not extend.

In so holding, the court also gave protection to the "idea" or "concept" that is "embodied in such a work" (the technical drawing) in violation of Section 102(b). It thereby unlawfully converted the copyright system into a backdoor form of patent protection, under which Creative Pipe could be liable for damages for sale of a product that is protected by neither the patent nor the copyright laws. *See Eliya, Inc. v. Kohl's Department Stores*, 2006 WL 2645196, at *9 (S.D.N.Y. Sept. 13, 2006) ("[O]wnership of a copyright in a pictorial representation of a useful article does not vest the owner of the picture with a derivative copyright in the useful article itself. If such roundabout copyrighting were permitted, copyright law's exclusion of useful articles would be eviscerated, because any useful article could be copyrighted by merely obtaining a copyright for a two-dimensional representation of the article.")

The decision thus violates a fundamental principle that underlies the Copyright Act--that protection of "useful articles" is the exclusive function of the patent laws, not the copyright laws. As the District Court correctly observed, "to allow the act of manufacturing a non-architectural useful item by using a copyrighted protected drawing of that item to constitute copyright infringement would be to elevate the copyright to a patent." (J.A. 3526)

The District Court attempted to justify its approach to damages based on the general provision of the Copyright Act, 17 U.S.C. § 504(b), which states that a

successful plaintiff may recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." The court interpreted the term "attributable" as justifying application of a "fruit of the poisonous tree," or consequential damages, theory, based on a "but for" causation analysis. That conclusion is erroneous, as a matter of law, however, because it would produce a result that would directly conflict with Section 113(b) of the Copyright Act. As discussed above, that provision specifically prohibits the imposition of substantive copyright infringement liability for the manufacture and sale of "useful articles" in the manner the court sought to accomplish through its reading of the general procedural provision governing the calculation of damages.

Since almost any manufactured "useful article" finds its origin in a copyright protected technical drawing or a copyright protected electronic CAD drawing, to simply allow the use of the underlying technical drawing to be sufficient to bring the sales revenue of the "useful article" into the orbit of copyright damages, would, from a practical view, destroy the exclusion of "useful articles" exclusion from copyright law. The court below did not cite any case that allowed as damages for infringement of copyrighted technical drawings the profits from the sale of "useful articles" they depicted. (J.A. 3528-3529) Rather, the cases upon which the court relied involved calculation of damages for violations of copyrights for architectural

27

drawings.  Some of the cases on which it relies do not support its conclusion.  *See Demetriades v. Kaufmann*, 680 F. Supp. 658 (S.D.N.Y. 1988) ("Although individuals are not free to make unauthorized copies of copyrighted architectural plans, they remain free to duplicate houses depicted in those plans unless and until the designs embodied in such plans are secured by patent.")  The other cases were decided before Congress definitively established the law governing the issue by adopting a provision carved out from the definition of "useful articles" a subset known as "architectural works" and expressly expanded the scope of copyright protection for architectural plans to permit recovery of damages upon the sale of a building constructed from plans for which the copyright was infringed.

In 1990, Congress adopted the Architectural Works Copyright Protection Act ("AWCPA"), which included a specific provision defining the scope of copyright infringement liability in cases involving "architectural works."  Prior to the adoption of this law, American copyright law denied protection to constructed architectural works because a building, as an expression of the architect's copyrighted plans, has a functional character.[6]  The amendment created a new category of protected "works of authorship" covering "architectural works."

---

[6]  *Christopher Phelps & Associates v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007) (quoting *Nimmer* § 2.08[D][2][b], at 2-126 ("[A]n architectural structure ordinarily constitutes a 'useful article' . . . .  For that reason, such structures remained unprotected by United States copyright law from passage of the current [Copyright] Act until enactment of an amendment, the Architectural Works Copyright Protection Act.")))

17 U.S.C. § 102(a)(8). "Architectural work" is defined as "the design of a building as embodied in any tangible medium of expression, <u>including a building,</u> architectural plans, or drawings." 17 U.S.C. § 101, ¶ 2 (emphasis added). This provision thus extends copyright protection to both architectural plans and the *buildings constructed through the use of those plans*. Construction of such a building is expressly defined as a violation of the copyright and thus constitutes a direct, independent act of infringement for which damages may be awarded.

The technical drawings involved here, however, do not fall within the definition of "architectural works," but instead involve pictorial depictions of "useful articles," which as noted is a category of objects separately defined in Section 101 ¶ 46 of the Copyright Act. Accordingly, the dated cases upon which the District Court relied have been overtaken by events and are no longer relevant.

Moreover, the special protection for "architectural works" is not unique. There are other cases in which Congress has carved out from the definition of "useful articles" other types of intellectual property and provided that damages may be collected for the construction of physical products that are reflected in the copyrighted design. For example, in *Bonita Boats*, the Supreme Court held that the Copyright Act preempted a Florida statute that prohibited the use of a direct molding process to duplicate unpatented boat hulls. 489 U.S. at 975-82. In response, Congress in 1998 adopted a new statute, 17 U.S.C. § 1301 *et seq.*, that

29

provides special copyright protection to "[t]he design of a vessel hull, deck, or combination of a hull and deck, including a plug or mold . . . ." 17 U.S.C. § 1301(a)(2). Section 1308 of that law expressly provides:

> The owner of a design protected under this chapter has the exclusive right to–
> (1)    Make, have made, or import, for sale or for use in trade, any useful article embodying that design; and
> (2)    Sell or distribute for sale or for use in trade any useful article embodying that design.

Here again, Congress passed special legislation that provided independent copyright protection to the physical goods manufactured in violation of a copyrighted design.

The adoption of these two statutes strongly supports Creative Pipe's argument that the District Court's assessment of damages based on its gross revenues from sale of the "useful articles" violated the Copyright Act. These two provisions demonstrate that when it chooses to do so, Congress knows how to make construction of useful articles, built through infringement of c plans that depict those objects, a separate, direct violation of the copyright laws, for which damages thus may be assessed based on revenues from sales of the final product. The fact that Congress has carved out exceptions, but has chosen not to extend such independent liability generally to construction of "useful articles" made from infringed technical drawings shows that it intended a different result to apply for sales of other products, such as the benches and other utilitarian objects involved

here. Indeed, under the court's interpretation, the passage of these two statutes would not have been necessary because federal courts already would have had the authority to award damages to the owners of all types of copyrighted drawings and designs based on the sale of the physical products. The fact that Congress did in fact have to pass legislation to produce this result refutes the court's theory.

For these reasons, this Court should hold that the District Court's award of damages to VSI based on a "profits on the sale of the end product" theory is inconsistent with the language and structure of the Copyright Act and should be overturned. Such a decision would not leave VSI without a damages remedy. The court held that Creative Pipe had copied the technical drawings that VSI had made available and used those drawings in reverse engineering VSI's products. Under these circumstances, the benefit that Creative Pipe received from the infringement was the cost that it would have had to incur to hire personnel to take the finished VSI products and generate technical drawings from those products. Creative Pipe argued below that this "value of use" remedy was the proper measure of damages in this case and accurately measured the "profit" that it gained from its infringement. "Saved acquisition costs is a measure of damages or profit when calculating value of use under the statute, where cash was not generated." *On Davis v. The Gap*, 246 F.3d 152, 162 (2d Cir. 2001) (internal citations excluded); *LTVN Holdings, LLC v. Odeh*, 2010 U.S. Dist. LEXIS 63164 (D. Md. June 25,

2010). Creative Pipe presented evidence that the "value of use" of the drawings-- or the saved acquisition costs--was $980. (J.A. 2361-2362) The District Court, however, never made findings of fact about the "value of use" that Creative Pipe saved through its infringing activities.

Accordingly, the proper result is that the Court should overturn, as a matter of law, the District Court's award of damages based on Creative Pipe's gross revenues from the sale of the physical products and should remand the case for calculation of damages under the proper "value of use" measure for its infringement of the copyrights on the drawings.

II.    The District Court Erred in Finding Liability for Patent Infringement when Plaintiff failed to introduce any evidence that an "Ordinary Observer" Could have Determined that the Design Patent Had Been Infringed.

Victor Stanley claimed Creative Pipe infringed its design patent, U.S. Patent No. D523, 263 ("the '263 Patent"). The District Court found that Creative Pipe's Nebelli Bench infringed the '263 Patent, but found that Creative Pipe's Necati Bench did not infringe the '263 Patent. The District Court's finding is not supported by any evidence regarding what an ordinary observer would have concluded, which is required for any finding of design patent infringement. The fault is Plaintiffs. They simply did not introduce any evidence on which a finder of fact could base this decision, and a district judge sitting as the trier of fact cannot

lawfully decide this issue *ex cathedra*, from his own experience, without any underlying evidence on which to base his decision.

It is not disputed that design patent infringement is determined by the "ordinary observer" test and must be established by a preponderance of the evidence. *E.g.*, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678-79 (Fed. Cir. 2008). Under the "ordinary observer" test, a fact finder is to consider whether a purchaser, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design. *Crocs, Inc. v. Inter'l Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *Arminak and Assoc., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1322 (Fed. Cir. 2007) (holding that ordinary observers are those that "'buy and use' the article bearing the design in question." (*quoting Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). Infringement is a question of fact and must be grounded on factual findings. *See Oakley, Inc. v. Inter'l Tropic-cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991) ("Infringement is a question of fact … and that ultimate finding is grounded on underlying findings." (internal citations omitted)). Thus, determining whether Creative Pipe infringed Victor Stanley's design patents requires a determination of who the relevant purchaser is and consideration of actual evidence regarding how that purchaser would view the accused benches, prior art, claimed designs, and whether they would be deceived.

Victor Stanley's Vice President Gerald Skalka represented, repeatedly, at trial that the customers for the products at issue are "architects, landscape architects, civil engineers, distributors, cities [sic] contractors, throughout the United States and many other countries." (J.A. 1685) The products are not sold to the general public; rather, they are sold to "technical people." (J.A. 1702) These technical consumers are not "impulse buyers," but rather are conscientious people who focused on the details. (J.A. 1702) (testimony of Gerald Skalka pointing out that consumers are not "impulse buyers" and are focused on the specifics of a product such as "how many welds there are").

There was no evidence of record upon which a fact finder could conclude that such conscientious, detail focused observers would find the Nebelli Bench "embodies the patented design, or a colorable imitation thereof." *Egyptian Goddess, Inc.*, 543 F.3d at 678. Victor Stanley simply did not present any evidence relating to how an "ordinary observer" with the relevant technical expertise would view the accused Nebelli Bench against Victor Stanley's patented design in light of the relevant prior art. Instead, Victor Stanley relied on the testimony of its Vice President and named inventor on the '263 Patent, Gerald Skalka, who does not have a technical background equivalent to or even similar to that of an ordinary observer. (J.A. 1684) Mr. Skalka is an economist and did not purport to testify as an expert. He testified about the origination of the claimed

design.  (J.A. 1787-1793)  Then, in a cursory manner, he compared a picture of

Victor Stanley's product to a picture of the accused Nebelli Bench.  (J.A. 1793-

1794)  Mr. Skalka admitted the following differences between the Nebelli bench

and the claimed design:

- The "triangle in the front that supports the leg"  (J.A. 1850);

- The design where the front leg meets the bench portion
  (J.A. 1850); and

- The curvature in its legs.  (J.A. 1850)

Despite these differences, and without explanation, Mr. Skalka asserted the

"general visual impression" of the Nebelli Bench was "intended to be duplicative."

(J.A. 1794)  Mr. Skalka did not testify as to whether an "ordinary observer" would

consider the Nebelli Bench to be the same or a substantially similar design as the

design claimed in the '263 Patent – only that he considered it to be the same

design.

Despite this lack of evidence, the District Court found the Nebelli Bench

infringed the '263 Patent.  Its opinion does not include any determination of who

an "ordinary observer" is or whether that observer would have been deceived as

required by *Egyptian Goddess*.  Instead, the District Court determined

infringement itself, and without reference to record evidence, by "examining the

illustrations in the patent and the accused products" and considering "for

35

background purposes" testimony from Mr. Skalka who it found had experience with the site furnishings marketplace, including bench end frames and prior art, and with purchasers of site furnishings." (J.A. 3568)

Under the settled case law, the District Court's *ex cathedra* analysis is insufficient to support a finding of infringement and, therefore, should be reversed. The Court did not provide any discussion of who the ordinary observer is or how an ordinary observer would view the VSI design and Nebelli bench. This analysis, however, is an indispensable prerequisite for a finding of patent infringement. Indeed, a similar analysis of infringement was rejected by the Federal Circuit in *Egyptian Goddess*, where it rejected an expert declaration regarding infringement because it did not:

> explain[] why an ordinary observer would regard the accused design as being closer to the claimed design than to the … prior art patent. In fact, Ms. Eaton's reference to the prior art buffers is limited to the single, and conclusory, comment that an ordinary observer and purchaser of nail buffers would consider the patented design and the accused buffer to be substantially similar, "particularly in light of other nail buffers, such as a solid block buffer and the hollow triangular Nailco buffer."

*Egyptian Goddess*, 543 F.3d at 682.

Here, the District Court analyzed the claimed design against the prior art (J.A. 3570), but it did not analyze the Nebelli Bench or explain why it was closer to the claimed design than the prior art. The District Court also did not address the

admitted distinct differences between the claimed design and the Nebelli Bench. It

therefore failed to satisfy the required criteria for making a proper "ordinary

observer" finding. For these reasons, the District Court's infringement finding

should be reversed.

III.    The District Court Erred in Awarding Compensatory Damages For Reverse
        Passing Off Without Evidence of Actual Injury.

The Lanham Act prohibits, in part, a "false designation of origin" that is

"likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association . . . or as to the origin" of "goods, services, or

commercial activities." 15 U.S.C. § 1125(a)(1)(A). Conduct that may constitute a

"false designation of origin" is "reverse passing off" or "reverse palming off,"

which occurs when a "producer misrepresents someone else's goods or services as

his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1

(2003); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1260 (9th Cir. 1994)

("Reverse passing off" or "reverse palming off" occurs when a product is

mislabeled to mask the creator's contribution).

To establish a prima facie claim of reverse passing off, a plaintiff must prove

four elements: "(1) that the work at issue originated with the plaintiff, (2) that

origin of the work was falsely designated by the defendant, (3) that the false

designation of origin was likely to cause consumer confusion, and (4) that the

plaintiff was harmed by the defendant's false designation of origin." *Syngenta*

*Seeks, Inc. v. Delta Cotton Coop, Inc.*, 457 F.3d 1269, 1277 (Fed Cir. 2006); *see also Web Printing Control v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990).

To obtain injunctive relief for a reverse passing off violation, a plaintiff must demonstrate only a *likelihood* of deception or confusion on the part of the buying public caused by the false designation of origin or false representation. *PPX Enters. Inc. v. Audiofidelity Enters. Inc.*, 818 F.2d 266, 271 (2d Cir. 1987). A plaintiff seeking money damages faces a higher burden and must establish *actual* consumer confusion or deception resulting from the alleged reverse passing off. *Id.*; *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir. 1997); *see also Web Printing Control v. Oxy-Dry Corp*., 906 F.2d 1202, 1205 (7th Cir. 1990) (emphasizing that a plaintiff seeking monetary damages in a Lanham Act false designation of origin claim is "required to show not only the likelihood of . . . confusion, but must demonstrate that it has been damaged by actual consumer reliance on the misleading statements."); *Schlotzky's Ltd. v. Sterling Purchasing*, 520 F.3d 393, 398 (5th Cir. 2008) (upholding trial judge's decision denying entry of $350,000 jury verdict because plaintiff "did not prove . . . actual damage).

Actual consumer confusion or reliance, a prerequisite to receipt of monetary damages under the Lanham Act, is often demonstrated through the use of direct evidence, such as testimony from members of the buying public. *See U-Haul Int'l Inc. v. Jartran Inc.*, 601 F. Supp. 1140, 1149 (D. Ariz. 1984), *aff'd in part*,

*modified in part and rev'd in part on other grounds*, 793 F.2d 1034 (9th Cir. 1986).

Another method of demonstrating a causal connection between the defendant's

reverse passing off and the harm alleged is the diversion of customers.  *Bracco*

*Diagnostics v. Amersham Health, Inc.*, 627 F. Supp. 2d 384 (D. N.J. 2009); *Black*

*& Decker Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 846 (E.D. Va. 1998)

(awarding monetary damages when Black & Decker presented evidence of twelve

to sixteen instances of customers mistaking "the yellow and black colors" on a

competing Pro-Tech saw for the yellow and black colors on the Black & Decker

power tools).  At bottom, plaintiff must offer evidence of actual consumer

confusion so that the defendant's alleged reverse passing off caused some palpable

harm.  *See Balance Dynamics v. Schmitt Industries*, 204 F.3d 683, 695 (6th Cir.

2000) (plaintiff manufacturer was not entitled to disgorgement of profits because

plaintiff could not demonstrate that defendant gained additional sales or that

plaintiff lost sales, or was forced to sell its product at a lower price); *Otis Clapp &*

*Sons, Inc. v. Filmore Vitamin Co.*, 254 F.2d 738, 745 (7th Cir. 1985); *Lindy Pen*

*Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *Aktiebolaget Electrolux*

*v. Armatron Intl*, 829 F. Supp. 458, 465 (D. Mass. 1992).

 In the present case, even assuming Victor Stanley may have demonstrated a

likelihood of confusion stemming from Creative Pipe's appropriation of Victor

Stanley CAD drawings sufficient to justify award of an injunction, Victor Stanley

failed to present any evidence of actual confusion supporting the District Court's award of Creative Pipe's profits--$1,150,750.79 plus interest from February 10, 2005 through December 31, 2010 as monetary damages. Specifically, Victor Stanley failed to produce any evidence that the submission of a CAD drawing by Creative Pipe, derived from a Victor Stanley CAD drawing, caused Creative Pipe to obtain municipal contracts or other sales to third-party customers that otherwise would have been awarded to Victor Stanley.

Creative Pipe's customers were sophisticated public procurement officers and professional brokers. The public procurement agents had established procedures for evaluating and awarding bids for site furnishings. The award of municipal contracts were made on the basis of which bid was the most "responsive," meaning the lowest price and "responsible," meaning satisfying the requirements of the proposal. With the exception of one item in the St. Charles, Missouri bid, none of the other seven identified municipal bids required that a CAD drawing be furnished. The Portsmouth purchasing agent testified that he had no knowledge that the furnishing of the CAD drawing by Creative Pipe was a factor in the award of the sale. Finally, although Creative Pipe was awarded the eight bids in question, Victor Stanley was the next lowest bidder for only one of these bids, and thus produced no evidence that it would have secured the sales but for Creative Pipe's wrongdoing.

The District Court pointed to a single sale of site furnishings by Creative Pipe to the city of Portsmouth, Virginia in 2005 for $86,660 as constituting evidence of actual consumer confusion and actual damages suffered by Victor Stanley. On that basis alone, the District Court awarded monetary damages in the amount of the net revenues from all sales by Creative Pipe of the twenty Victor Stanley products from February 11, 2005 through December 30, 2010. In so holding, the District Court opined that "[t]here is direct proof that one sale, the Portsmouth, Virginia sale, was diverted from [Victor Stanley] by [Creative Pipe] because of the reverse passing off." (J.A. 3553) The District Court's finding in this regard is wholly misplaced, however, because the Portsmouth Invitation to Bid contained no requirement that a CAD drawing even be supplied. Michael Ammons, the Procurement Administrator for the City of Portsmouth, testified at trial that he did not specify that a CAD drawing be submitted with any prospective bids because the site furnishings to be supplied were not "that complex." He further testified that he had no knowledge whether supplying a CAD drawing was a factor in Creative Pipe securing that contract. (J.A. 2076-2077, 2086-2087, 2079-2080) Indeed, Victor Stanley presented no evidence that anyone at Portsmouth relied on the CAD drawing. Thus, the evidence does not support the Court's speculation that the CAD drawing submitted by Creative Pipe misled any

bid evaluator and was responsible for the contract being diverted from Victor Stanley to Creative Pipe.

In its holding, the District Court cited with approval *Universal Furniture International, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417 (4th Cir. 2010), in which this Court considered a reverse passing off claim by a furniture manufacturer, Universal against a competing company, Collezione. In that case, Universal designed two furniture collections and filed registration forms with the Copyright Office seeking copyright protection for their unique furniture collections, which were granted. Thereafter, Collezione began designing furniture imitating the Universal collections for a reduced price, and also displayed some pieces at a well-known furniture market. Universal's Senior Vice President visited the market and concluded that with respect to other pieces, Callezione "had simply removed Universal stickers from some pieces" and was displaying as its own furniture, furniture actually manufactured by Universal. This Court determined that Collezione's conduct constituted reverse passing off pursuant to the Lanham Act and also found that Universal had suffered actual harm from the false designation. The Court emphasized that "[b]y displaying Universal's furniture as its own for a lower price, Collezione appears to have retained customers that would have otherwise purchased from Universal, even if it did not actually sell the . . . pieces in question." *Id.* at 439. As evidence of actual damages, Universal

referred to specific sales of imitation furniture by Collezione to customers who placed orders during the period in which Collezione had displayed as its own corresponding pieces of Universal's genuine furniture.  In other words, customers relying upon the quality and aesthetics of Universal's furniture placed orders with Collezione.  *Universal Furniture* is distinguishable on its facts because there is no evidence in this case that Creative Pipe ever displayed physical Victor Stanley furniture to prospective buyers and thereafter made sales of its similar products.

Moreover, Victor Stanley failed to offer any evidence in connection with Creative Pipe's use of Victor Stanley's CAD drawings after 2006 to obtain municipal contracts and other sales.  Thus, the award of compensatory damages to Victor Stanley in the amount of Creative Pipe's gross profits for the years 2005 through 2010 should be reversed, for Plaintiff's failure to offer any evidence of actual consumer confusion or reliance on the CAD drawings passed off by Creative Pipe as its own.

It follows that the District Court's award of enhanced damages should also be reversed, as Victor Stanley failed to demonstrate actual damages stemming from the reverse passing off of its CAD drawings by Creative Pipe.  15 U.S.C. § 1117(a) ("In assessing damages the court may enter damages . . . for any sum above the amount found as actual damages"); *see also BASF Corp. v. Old World*

*Trading Co.*, 41 F.3d 1081, 1096 (7th Cir. 1994) (describing enhanced damages as a discretionary award over and above compensatory damages).

IV.    The District Court Erred in Awarding Compensatory Damages Without Evidence of Actual Injury as Required By Maryland Common Law Actions for Unfair Competition.

In unfair competition cases, like all tort cases, plaintiff has the burden to prove a causal relationship between the actual damages it allegedly suffered and the wrongful conduct of the competitor.  *See GAI Audio of New York, Inc. v. Columbia Broadcasting*, 27 Md. App. 172, 196 (1975) (reasoning that where defendants duplicated and sold more than one half-million copies of the unauthorized popular recordings, the actual damages were calculated as the number of tapes produced by the defendant times the selling price of the tapes had the plaintiff sold them, less the plaintiff's costs if they would have made those sales).  *Id.* at 199; *see Procter and Gamble Company v. Haughen*, 627 F. Supp. 2d 1287, 1293 (D. Utah 2008) (finding an award of compensatory damages appropriate when plaintiff offered evidence of an actual decline of sales).

The District Court noted that Creative Pipe engaged in a massive degree of unfair competition directed at Victor Stanley, including deceitfully obtaining copies of Victor Stanley's copyright-protected drawings, misrepresenting the drawings as its own, creating the false impression on Creative Pipe's website that it was comparable to Victor Stanley as an American manufacturer of quality site

44

furnishings, and removing the country of origin labels from its products. (J.A. 3541-3542)  The Court awarded as compensatory damages for unfair competition Defendants' profits attributable to its sale of VSI like products--$1,150,750.79 with prejudgment interest of $228,804.91."  (J.A. 3544)

The District Court could cite only one sale that Victor Stanley lost because of unfair competition; namely the sale to the City of Portsmouth, Virginia in 2005 in which Victor Stanley and Creative Pipe were the only bidders and for which Creative Pipe submitted an altered VSI drawing with its bid.  (J.A. 3541-3542)  As previously noted, there is no evidence that supports the District Court's conclusion that the submission of the altered drawing was a factor in Creative Pipe winning the bid.  In fact, no drawings were required to be submitted with the Portsmouth bid.  The purchasing agent for Portsmouth testified that the site furnishing purchase was not "complex" enough to require the assistance of CAD drawings, no person who decided the bid testified that the altered drawing was a factor, and Creative Pipe's bid of $84,660.00 was substantially lower than Victor Stanley's bid of $96,820.25.  In light of these facts, the District Court's determination that Victor Stanley lost the Portsmouth bid because Creative Pipe submitted an altered Victor Stanley copyright CAD drawing is clearly erroneous.

Victor Stanley knew from Creative Pipe's sales records the identity of each purchaser of the 20 VSI-like site furnishings from February 2005 through

45

December 2010. (J.A. 2828-2839) Indeed, it was from these records that Creative Pipe's profits were calculated by VSI's expert. (J.A. 2827) Yet Victor Stanley produced no evidence that any of these customers was even aware of, let alone, relied upon statements on Creative Pipe's website, or that altered CAD drawings were furnished to and relied upon by the purchaser, or that these drawings played any role in the selection of Creative Pipe as the winning bidder. However, such evidence of reliance, resulting in diversion of a sale from VSI to Creative Pipe, is required to obtain monetary damages, as opposed to injunctive relief under a Maryland common law unfair competition claim. *Baltimore Bedding Corp v. Moses*, 182 Md. 229, 34 A.2d 338 (1943) (upholding the grant of a permanent injunction by the trial judge against Baltimore Bedding, in the absence of a compensatory damages award, because plaintiffs failed to offer any evidence bearing upon their lost profits or loss of goodwill as a result of defendants' use of a similar trade name).

Victor Stanley is one of approximately 40 major manufacturers selling similar sites furnishings, such as trash receptacles, benches, ash urns and planters. Any false impression made by Creative Pipe on its website, if it had any effect, would have affected not only Victor Stanley's sales then, but also every other major manufacturer of site furnishings. Victor Stanley was not entitled to collect damages unless it could demonstrate that it suffered a lost sale that is directly

linked to a false impression created by Creative Pipe.  If no proof of loss were required, then Creative Pipe could be held liable for *all* of its profits twenty different times, which simply makes no logical or legal sense.

The District Court cites *Car-Freshener Corporation v. Marlenn Products Company*, 183 F. Supp. 20, 46 (D. Md. 1960) for the proposition that a defendant can be made to pay over its profits from its unfair competition.  *Car-Freshener* involved a claim of trademark infringement involving two competitors who made a competing product--a pine tree-shaped dry-air deodorant.  Defendant manufactured and sold a product identical to the dry deodorant product that plaintiff had been selling for many years.

The court determined that the defendant had engaged in misappropriation of goods and was liable for unfair competition.  The court ordered that the defendant account and pay over to plaintiff all gains or profits derived from its sale of the physical product it was palming off as the plaintiff's product.  The causal relationship between the unfair competition--misappropriation of the pine tree-shaped dry deodorant product and the defendant's profits was established by probative evidence.  *Id.*

Here, there was no such misappropriation of Victor Stanley physical products by Creative Pipe and no evidence of reliance and causation on which to award all to Victor Stanley of Creative Pipe's profits for five years from the sale of

47

Victor Stanley-like products. Site furnishings are useful articles that can be, and often are, "knocked off" between competitors.  In fact, many of the municipalities required that the benches be "knocked off" when they require that products be Victor Stanley "like" products.  The bidders for the Virginia Tech, as with most municipal bids, offered very similar benches, ash urns, and trash receptacles. *See* bids from Creative Pipe (J.A. 3461-3463), All Recreations of Virginia (J.A. 3475-3492), Petersen Manufacturing (J.A. 3493-3499), and Preeminence (J.A. 3500-3509).  The sophisticated purchasing agents knew they were buying products that Creative Pipe had made and not products made by Victor Stanley.

Moreover, Victor Stanley failed to offer any evidence of unfair competition by Creative Pipe against VSI after 2006 related to municipal contracts and other sales.  Thus, there was no factual basis for the District Court to award Creative Pipe's profits for unfair competition for the years 2007 through 2010 and the award for those years should be reversed.

In sum, the District Court calculated plaintiff's compensatory damages on the unfair competition and Lanham Act claims as the same amount as for the copyright infringement claim--Creative Pipe's alleged profit of $1,150,750.79.  For the reasons set forth above, these two awards fail for the same reason--Plaintiff's failure to introduce evidence to satisfy the reliance and causation element--and should be overturned.

The invalidation of the compensatory damages awards in turn requires the vacatur and remand of the court's award of $500,000 in punitive damages on the Maryland unfair competition claim and enhanced damages of one-half the compensatory damages, or $575,375.40, on the Lanham Act reverse passing off claim. In both instances, these awards are either expressly tied to, or required by law to be reasonably related to, the amount of the actual damages awarded. *See State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) (the Due Process Clause requires that exemplary awards be reasonably related to compensatory awards). Since the compensatory damages awards are unlawful, the predicates for the awards of exemplary damages are no longer valid. These assessments should be vacated and remanded to the District Court for further consideration.

Moreover, this Court should give no weight to the District Court's effort to insulate from effective appellate review its awards of exemplary damages under the unfair competition and Lanham Act counts. The District Court attempted to tie these two awards together by stating that if its ruling on only one of the two claims was overturned, it would increase the exemplary award under the other claim to compensate for the amount invalidated on appeal. (J.A. 3546, 3555) This Court cannot have its hands tied by a lower court in the exercise of its appellate jurisdiction to review a judgment on its merits. Nor should it entertain the District

49

Court's suggestion that on remand it would blindly reenter judgment in the same dollar amount, regardless of this Court's decision or its findings of law or fact.

Accordingly, the Court should vacate the two exemplary awards at the same time that it invalidates the defective compensatory awards. It should remand all questions related to damages to the lower court for reconsideration under the law as established by this Court's order.

V.    The District Court Erred in the Expansive Standard It Used When It Awarded Attorneys' Fees As a Sanction for Spoliation.

Prior to the trial, Victor Stanley raised the issue of whether Pappas and Creative Pipe had engaged in the spoliation of electronically stored information that was on Creative Pipe's computers. The District Court, along with Magistrate Judge Paul Grimm, held evidentiary hearings on the issue. On September 9, 2010, Magistrate Judge Grimm issued a memorandum decision that Pappas and Creative Pipe had engaged in the spoliation of evidence when they removed and deleted electronically stored information from Creative Pipe's computer in 2005 and 2006. (J.A. 999) Magistrate Judge Grimm recommended that as a sanction for the spoliation a default judgment be entered pursuant to Rule 37(b)(2)(A)(vii) against Creative Pipe and Pappas for the copyright infringement claim. Magistrate Judge Grimm also ordered that monetary sanctions be paid:

> Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) Defendants shall pay monetary sanctions equivalent to Plaintiff's attorney's fees and costs associated with all

> discovery that would not have been un[der]taken but for
> Defendants' spoliation as well as the briefings and
> hearings regarding Plaintiff's Motion for Sanctions.
> (J.A. 1100)

On November 1, 2010, the District Court adopted the Order and recommendation

of the Magistrate Judge.  (J.A. 1100-1101)

Thereafter, VSI filed a motion for attorneys' fees and costs, requesting

$1,084,800.79.  VSI sought legal fees and expenses for the period November 17,

2006 through September 30, 2010.  (J.A. 1105-1119)  Creative Pipe and Pappas

filed an opposition (J.A. 1289-1297), arguing that much of the attorneys' fees and

costs being sought were unrelated to Defendants' spoliation of evidence.  The

Magistrate Judge awarded to VSI, and against Creative Pipe and Pappas,

$1,049,850.04 in attorneys' fees and costs.  (J.A. 2176-2192)  Instead of limiting

the award to fees and costs associated with all discovery that would not have been

undertaken but for Defendants' spoliation, Magistrate Judge Grimm significantly

broadened the standard for the award to include attorneys' fees and costs for "all

discovery," including all motions and hearings that Plaintiff undertook during the

litigation.  Magistrate Judge Grimm explained the reason for this:

> [T]he effects of spoliation are not limited to a party's
> efforts to discover and prove the spoliation and its scope.
> Rather, the willful loss or destruction of relevant
> evidence taints the entire discovery and motions practice.
> Therefore, the Court Order clearly stated that
> Defendant's sanctions encompass all fees associated with
> "all discovery" that Plaintiff made because of

51

Defendant's spoliation." (Citation omitted). This Court already found that Defendant's First spoliation efforts corresponded with the beginning of the litigation. (Citation omitted). Accordingly, I find that Defendant's misconduct affected the entire discovery progress since the commencement of this case.

(J.A. 2185)

The expansion of the standard for the award for attorneys' fees and costs to include "all discovery" resulted in a very large and unjustified award of attorneys' fees and costs, much of which was unrelated to "all discovery that would not have been undertaken but for Defendants' spoliation, as well as the briefings and hearings." Magistrate Judge Grimm's decision is inconsistent with the standard for awarding attorneys' fees and costs for spoliation articulated in *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009):

> When ruling on a spoliation motion, courts will grant an award of costs or attorney's fees in four situations. First, courts will award legal fees in favor of the moving party as an alternative to dismissal or an adverse jury instruction. Second, courts will grant discovery costs to the moving party if additional discovery must be performed after a finding that evidence was spoliated. Third, in addition to a spoliation sanction, a court will award a prevailing litigant the litigant's reasonable expenses incurred in making the motion, including attorney's fees. Fourth, in addition to a spoliation sanction, a court will award a prevailing litigant the reasonable costs associated with the motion plus any investigatory costs into the spoliator's conduct.

*Id.* at 523-24.

52

Magistrate Judge Grimm took the position here that *Goodman* need not be followed because that case did not involve bad faith. In support of this position, Magistrate Judge Grimm cites *Metropolitan Opera Association v. Local 100, Hotel Employees and Restaurant Employees International Union*, 212 F.R.D 178 (S.D.N.Y. 2003), as providing better guidance because that case involved a finding of bad faith. But *Metropolitan Opera* does not articulate a different standard for the award of attorneys' fees and costs when bad faith has occurred. There, the Court reviewed in detail the numerous discovery failures. The Court then awarded "attorney's fees necessitated by the discovery abuses by defendant and their counsel." *Id.* at 231. The opinion does not provide that where there has been bad faith, attorneys' fees and costs should be awarded for all discovery, all motions and hearings. Instead, as with Fed. R. Civ. P. 37(b)(2)(C), it requires a nexus between the discovery failure and the attorneys' fees and costs it necessitated.

The District Court upheld the recommendation of the Magistrate Judge in its entirety. (J.A. 3510-3516)

In affirming the Magistrate Judge's award of attorneys' fees, the District Court stated the standard it was using for includable fees and costs is consistent with the purpose of designing a sanction that will "restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." (J.A. 3513)

53

The standard for the award of attorneys' fees and costs for discovery violations is set forth in Fed. R. Civ. P. 37(b)(2)(C). "Instead of or in addition to the orders above, the court must order the disobedient party… to pay the reasonable expenses, including attorney's fees, <u>caused</u> by the failure... As noted in *Tequila Centinela v. Bacardi & Co. Ltd.*, 248 F.R.D. 64, 69 (D.D.C. 2008), the causal connection between defendants violations of Rule 37 and reasonable expenses incurred by plaintiff  [is] not to be taken lightly and a near "but for" relationship must exist between the Rule 37 violations and activity for which fees and expenses are awarded.'" *Id.*, citing *Cobell v. Babbit,* 188 F.R.D. 122, 127 (D.D.C.1999).

However, sanctions to restore a prejudiced party to the same position that he or she would have been in, absent the wrongful conduct of the opposing party by disobeying a court, are found in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). The severest sanction available to a District Court is rendering a default judgment against the disobedient party (Fed. R. Civ. P. 37(b)(2)(A)(vii)). Here the magistrate judge recommended, and the District Court had already imposed as a sanction for spoliation, a default judgment against Creative Pipe and Pappas on the copyright infringement claim. Thus, a sanction had already been facilitated and imposed that satisfied the purpose of restoring plaintiffs to the position they would have been in absent the spoliation.

In its opinion, the District Court states: "This court has found that Defendants' spoliation commenced as early as October 11, 2006 and plaintiff's earliest submitted billings are from November 17, 2006 the date of the first of depositions, which were impacted by the destruction of evidence." (J.A. 3514) The District Court does not provide any factual basis for a causal connection between the spoliation in October 11, 2006 and attorneys' fees and costs incurred, at that time, 'that would not have been undertaken but for the spoliation".

Significantly, the first time there is any mention of "ESI issues" in Mr. Ogg's billing records is November 12, 2008. (J.A. 1171) This is corroborated by the deposition testimony of Gerald Skalka, Vice President of VSI, on November 25, 2008. At that time he stated they had determined "a few days ago" that "there is a significant possibility that a whole lot of what was supposed to be on the ESI was deleted." (J.A. 1320-1321) In a letter dated February 2, 2009, VSI counsel Randall Ogg states, "We are writing regarding evidence we have recently discovered regarding (a) Creative Pipe Inc.'s ("CPI") deletion of responsive Electronically Stored Information ("ESI") and (b) CPI's failure to comply fully with the various Court Orders relating to ESI." (J.A. 810) It was only after November 8, 2008 that attorneys' fees and costs were incurred to determine if ESI had been deleted: Andreas Spruill, VSI's forensic expert, began his investigation

55

for missing ESI, and motions were filed and hearings were held on the issue of spoliation of the ESI.

Attorneys' fees and costs awarded by the District Court that were unrelated to any act of spoliation included:

1.  Opposing Defendants' motions to dismiss and motion for summary judgment in November and December 2007, and January through June 2008 (J.A. 1156-1165, 1228-1231);

2.  Drafting document requests for Defendants in April 2007 (J.A. 1130);

3.  Review of paper documents produced by Creative Pipe in February, March and April 2007 (J.A. 1126-1130);

4.  Reviewing and responding to Defendants' interrogatories and requests for production of documents in April 2007, and June 2008 through September 2008 (J.A. 1130, 1166-1168);

5.  Subpoenaing and reviewing documents from third parties, including bid documents from the Chicago Transit Authority; Tempe, Arizona; Riverside Transit Authority; Las Vegas Convention Center; St. Charles, Missouri; Norfolk; Portsmouth and other municipalities in April through July 2007 (J.A. 1129-1131, 1133-1140, 1142);

6.    Depositions of present and former Creative Pipe employees, including Stephanie Pappas, Becky Hall, Christie Doll, Chad Henry, Consuela Ramirez, Ryan Ferguson, and Evan DeRouen in June 2007 (J.A. 1131);

7.    Research into causes of action and damages, November 2007 through February 2008 (J.A. 1155-1159, 1162), and research related to the counterclaim; (J.A. 1224-1226);

8.    Communications with Gerald Skalka to discuss strategy and status of the case from November 2006 through November 12, 2008.  (J.A. 1125-1171)

The issue of what attorneys' fees and costs that VSI is entitled to be reimbursed for in connection with the spoliation of evidence should be remanded to the District Court with the instruction that attorneys' fees and costs should only be awarded where a causal connection is established between the spoliation of evidence and specific attorneys' fees and costs incurred because of the spoliation.

## CONCLUSION

The Court should vacate the decision of patent infringement.  The Court should also vacate all of the compensatory damage awards, including those for copyright infringement, Lanham Act violations, unfair competition, and patent infringement.  Further, the Court should vacate the two exemplary awards at the same time that it invalidates the defective compensatory awards, and should remand all questions related to damages for reconsideration under the law as established by this Court's order.  Finally, the Court should limit the award of attorneys' fees to those attorneys' fees and costs incurred as a direct result of Appellant's spoliation.

## REQUEST FOR ORAL ARGUMENT

Appellant requests oral argument because this case presents important legal issues of first impression regarding the unsupported expansion of damages to include "useful articles" in a copyright case and the requirement that a causal link to damages be shown before damages are awarded in a Lanham Act case.

This brief submitted by

/s/ James A. Rothschild
James A. Rothschild, Esquire
Anderson, Coe & King, LLP
Seven Saint Paul Street, Suite 1600
Baltimore, Maryland  21202
(443) 573-9302
rothschild@acklaw.com

Joshua J. Kaufman, Esquire
Venable LLP
575 7th St. NW
Washington, DC 20004
(202) 344-8538
jjkaufman@venable.com

Counsel for Appellant Creative Pipe, Inc.
Attorney for Creative Pipe, Inc.

Dated: January 30, 2012

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*12,616*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: January 30, 2012                           /s/ James A. Rothschild
                                                  *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of January, 2012, I caused this Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Randell C. Ogg
> The Law Offices of Randell C. Ogg
> 1150 Connecticut Avenue, N.W., Suite 900
> Washington, D.C.  20036
> (202) 862-4323
>
> *Counsel for Appellee*

I further certify that on this 30th day of January, 2012, I caused the required number of bound copies of the Brief of Appellants and Joint Appendix to be hand-filed with the Clerk of the Court, and one copy of the Joint Appendix to be served, via UPS Ground Transportation, upon Counsel for Appellee at the above address.

/s/ James A. Rothschild
*Counsel for Appellants*